**John J. McCANN**

v.

**COMMUNICATIONS DESIGN CORPORATION, Oliver P. MacKinnon, Jr., Thomas E. Minogue, Jr., and Westinghouse Communications Software, Inc.**

**Civ. No. B–89–164 (JAC).**

United States District Court, D. Connecticut.

Aug. 8, 1991.

James J. Murray, Guy Heinemann, New York City, James Mulvey, Mulvey & Koratash, Danbury, Conn., for plaintiff John J. McCann.

Richard A. Horgan, Sheila A. Ozalis, Winthrop, Stimson, Putnam & Roberts, Stamford, Conn., for defendants Communications Design Corp. and Oliver P. MacKinnon, Jr.

Edward F. Hennessey, Katherine B. Larson, Robinson & Cole, Hartford, Conn., for defendant Westinghouse Communications Software, Inc.

## RULING ON PLAINTIFF'S SECOND MOTION TO RECUSE

JOSÉ A. CABRANES, District Judge:

Well after Plaintiff's Motion for Recusal of Hon. José A. Cabranes (filed May 20, 1991) ("Plaintiff's First Recusal Motion") had been submitted for decision, and shortly before the court's decision was to enter, the court received a letter from Attorney James J. Murray that raised new issues—issues that, in Mr. Murray's view, "mandate [this court's] recusal from the *McCann* case ... as a technical matter...." Letter from Attorney James J. Murray (dated June 25, 1991 and docketed June 27, 1991) ("June 25 Letter"). Treating that letter as a new motion to recuse, the court directed opposing counsel to submit a response by July 3, 1991, by which date this second motion would be deemed submitted and ripe for decision. Defendants Communications Design Corporation ("CDC"), Oliver P. MacKinnon, Jr. ("MacKinnon") and Westinghouse Communications Software, Inc. ("WESTCOM") filed memoranda on July 3, 1991. After a review of the record, the court entered an endorsement order on July 5, 1991 denying this second motion to recuse and indicating that a ruling would follow. This is that ruling.

### Background

Plaintiff's First Recusal Motion was denied by this court on June 28, 1991, 775 F.Supp. 1506 ("June 28 Ruling"). In the June 25 Letter, plaintiff's counsel informed the court that he had "just learned" of certain facts that he believes serve as an independent basis, "quite irrespective of ... [Plaintiff's First Recusal Motion] under other provisions," for recusal in this case. The June 25 Letter states that "[i]t never crossed the minds of plaintiff or his counsel before [Plaintiff's First Recusal Motion] that such a situation [sic] might exist." June 25 Letter at 4. They "assumed that ... [I] ... would have learned of any interest such as that growing out of the Westinghouse solicitations and donations, [my] Yale Trusteeship and [my] spouse's professorship, and recused [my]self." *Id.* The June 28, 1991 ruling referred to this letter and to the allegations therein. 775 F.Supp. at 1509 n. 1. In the course of denying Plaintiff's First Recusal Motion, I reviewed the record at great length, *see id.* at 1509-21, in order to present a complete response to plaintiff's serious but untimely and unfounded accusations. I assume familiarity with the June 28, 1991 ruling in briefly outlining its holding below.

Plaintiff's First Recusal Motion alleged that 28 U.S.C. §§ 144 and 455 ("sections 144 and 455") required my recusal. In light of the applicable standards in the circumstances presented, *see In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312-14 (2d Cir.1988), *cert. denied*, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989), I found that (1) plaintiff's affidavit seeking the disqualification was untimely, (2) plaintiff did not allege "extrajudicial" conduct as required by sections 144 and 455, and (3) even if plaintiff's motion could be said to have been timely and could be said to have alleged extrajudicial conduct—which plainly was *not* possible—plaintiff had failed to sustain his burden of showing even an appearance of bias. *See* 775 F.Supp. 1506.

Plaintiff's second motion to recuse relies specifically upon sections 455(b)(4),[1]

---

1. Section 455(b)(4) requires that a judge shall also disqualify himself [when] [h]e knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

Section 455(d)(3) provides that " 'fiduciary' includes such relationships as executor, administrator, trustee, and guardian."

Section 455(d)(4) defines "financial interest" as "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant *in the affairs of a party* ...." (emphasis added).

455(b)(5)(iii),[2] and 455(a),[3] and the definition of the term "financial interest" in those provisions. Plaintiff alleges that my affiliation with Yale University ("Yale")—I am a trustee of Yale and my wife is a Professor of Law at Yale Law School[4]—means that I have a "financial interest in the subject matter in controversy or in a party to the proceeding," 28 U.S.C. § 455(b)(4), because Westinghouse Electric Corporation ("Westinghouse"), the parent company of defendant WESTCOM,[5] is a "contributor of substantial funds to Yale." June 25 Letter at 1. In support of this claim, plaintiff cites a $20,000 grant to Yale from Westinghouse in fiscal year 1986 and claims that "thousands of dollars in scholarship funds to Yale College students" are given by Westinghouse each year. *Id.* Further, plaintiff claims that "solicitors of funds for Yale actively continue to seek to persuade Westinghouse to provide additional funds to Yale." *Id.*

Through a series of unsupported and dubious assumptions, plaintiff claims that since Westinghouse has made certain financial gifts to Yale, there exists here a disqualifying "financial interest" which requires my recusal. *Id.* at 2.

Finally, plaintiff claims that even if section 455(b)(4) did not mandate recusal, section 455(a) requires recusal because Westinghouse's relationship to Yale and my relationships to Yale give rise to an "appearance" of partiality. *Id.* at 3.

**2.** Section 455(b)(5)(iii) provides that a judge must recuse himself when "[h]e or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person ... [i]s known by the judge to have an interest that could be substantially affected by the outcome of the proceeding."

**3.** Section 455(a) provides that
[a]ny justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

**4.** I have been a trustee since 1987—technically, a Fellow of the Yale Corporation. Although plaintiff does not include it in his allegations, it may be noted that I am also a former General Counsel of Yale (1975–1979).

**5.** Westinghouse, through intermediate subsidiaries, owns 100% of the stock of defendant WEST-

*Discussion*

## I. Evidence of "Financial Interest"

Plaintiff did not submit an affidavit of any kind with what is, in effect, his second motion to recuse. Affidavits may be filed to support allegations under section 455, particularly to support a section 455(b)(1)[6] claim of actual personal bias or prejudice. *See Apple v. Jewish Hosp. and Medical Center*, 829 F.2d 326, 333 (2d Cir. 1987). Although claims under section 455(b)(1) and section 144[7] of actual bias or prejudice, are construed *in pari materia, id.*, and an affidavit of bias is required by the plain language of section 144, an affidavit may not be required for claims of actual bias or prejudice based upon section 455(b)(1). *Id.; see also United States v. Wolfson*, 558 F.2d 59, 62 n. 11 (2d Cir. 1977); *Lamborn v. Dittmer*, 726 F.Supp. 510, 514 (S.D.N.Y.1989); *cf. United States v. Sibla*, 624 F.2d 864, 867–68 (9th Cir.1980) (suggesting that an affidavit is *not* required under section 455). It follows that an affidavit may not be required for claims under other subsections of section 455 for an *appearance* of bias or prejudice. Nonetheless, plaintiff has the burden of alleging specific facts to support his conclusory statements. *Person v. General Motors Corp.*, 730 F.Supp. 516, 519 & n. 2 (W.D.N.Y.1990) (allegations "either wholly conclusory or totally without factual sup-

COM. June 25 Letter at 1; Defendant CDC's and MacKinnon's Memorandum in Response to Plaintiff's Counsel's Letter to this Court Dated June 25, 1991 Requesting Recusal (filed July 3, 1991) at 2.

**6.** Section 455(b)(1) provides that a judge must disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

**7.** Section 144 provides in relevant part that
[w]henever a party to any proceeding in a district court makes and files *a timely and sufficient* affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
(emphasis added).

port" are "utterly inadequate to require recusal"). The untimely affidavit filed in support of Plaintiff's First Recusal Motion, *see* 775 F.Supp. at 1524–27, is not, in any event, relevant to this second motion to recuse.

Plaintiff has presented no affidavits or other documentation regarding the 1986 gift from Westinghouse to Yale or the "thousands of dollars in scholarship funds" allegedly given to Yale students by Westinghouse. Further, plaintiff fails to substantiate the claim that Westinghouse is a "contributor of substantial funds to Yale" or the suggestion that after 1986 Westinghouse gave and continues to give "substantial funds" to Yale.

Defendant CDC submitted a Memorandum in Response to Plaintiff's Counsel's Letter to this Court Dated June 25, 1991 Requesting Recusal (filed July 3, 1991) ("CDC's Response") and an Affidavit of Attorney Richard Horgan (filed July 3, 1991) ("Affidavit") in support thereof. Mr. Horgan states that he contacted the Office of the Vice President for Development and Alumni Affairs of Yale University ("Yale Development Office") inquiring what gifts, if any, Yale had received since January 1, 1986 from "Westinghouse Electric Corporation or any subsidiary or affiliate thereof or from any related foundation." Affidavit ¶ 2. According to Mr. Horgan, the Yale Development Office advised him on June 28, July 1 and July 2, 1991 that the records maintained by Yale indicate the following:

(i) Westinghouse gave Yale University $20,000 on or about March 25, 1986 to be used under the direction of Professor Narenda of the Department [of] Electrical Engineering in connection with a controlled engineering course; (ii) Westinghouse did not make any other gifts to Yale University in calendar 1986; (iii) Westinghouse did not make any gifts to Yale University in calendar 1987, 1988 or 1989; (iv) on or about July 5, 1990 Westinghouse gave $5,000 to Yale University for the purpose of assisting in the funding of a Yale project known as the Program On Non-Profit Organizations; (v) Westinghouse did not make any other gifts to Yale University in 1990; and (vi)

Westinghouse has not made any gifts to Yale University in 1991 nor is it expected to do so.

Affidavit ¶ 2.

Mr. Horgan also stated that he had obtained copies of 1988–89 and 1989–90 Yale Development Reports containing lists of corporations and foundations that made grants or commitments to Yale of $25,000 or more during those years, Affidavit ¶ 3, and that Westinghouse is not listed as such a contributor on either list. *Id.* at Exhibits A & B.

Mr. Horgan also reports under oath that the Yale Development Office informed him on June 28 and July 2, 1991 that "Yale University does not consider Westinghouse to have been a significant donor in the past or to be a significant prospective donor in the foreseeable future." Affidavit ¶ 4. In fact, Exhibit A to the Affidavit indicates that gifts to Yale in 1989–90 totaled approximately $130,000,000. Thus, the $5,000 gift from Westinghouse in 1990 apparently represents .0038% of the total gifts to Yale for 1989–90 and .045% of the approximately $11,200,000 received during that year from corporate donors (after deducting matching gifts received by the Yale Alumni Fund, which Yale credits to the individual alumnus). Affidavit ¶ 4, Exhibit A.

Finally, Mr. Horgan states that he was advised by the Yale Development Office that Yale has no arrangement with Westinghouse concerning scholarships to individual students. Affidavit ¶ 5. If Westinghouse grants scholarships to individual students, the students select the college they wish to attend. *Id.* Yale considers any such scholarships to be a gift to the student and not a gift to or for the benefit of Yale. *Id.*

## II. Recusal Under Section 455(b)(4)

Section 455(b)(4) establishes two classes of disqualifying interests: "financial interest in the subject matter in controversy or in a party to the proceeding," which requires disqualification regardless of the size of the interest, and "other interests," where disqualification is required if any

such interest "could be substantially affected by the outcome of the proceeding." *See In re Cement Antitrust Litigation,* 688 F.2d 1297, 1308 (9th Cir.1982), *aff'd for want of a quorum,* 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983); *In re New Mexico Natural Gas Antitrust Litigation,* 620 F.2d 794, 796 (10th Cir.1980); *In re Virginia Elec. & Power Co.,* 539 F.2d 357, 366–68 (4th Cir.1976).

### A. "Financial Interest"

The Supreme Court in *Liljeberg v. Health Services Acquisition Corp.* found that "§ 455(b)(4) requires disqualification no matter how insubstantial the financial interest and regardless of whether or not the interest actually creates an appearance of impropriety." 486 U.S. 847, 859–60 n. 8, 108 S.Ct. 2194, 2202 n. 8, 100 L.Ed.2d 855 (1988). Thus, any "financial interest" as defined in section 455 requires disqualification. Plaintiff argues that I have such a disqualifying "financial interest" by virtue of my position as a trustee of Yale and my wife's position as a Professor of Law at Yale Law School.

■ The "financial interest" for which section 455(b)(4) requires recusal is defined in section 455(d)(4). *See supra* note 1. A "financial interest" exists where the presiding judge, his spouse or any minor child living in the judge's household has ownership of a "legal or equitable interest," however small, or has a relationship as director, adviser, or other "active participant" in the affairs of a party or in the subject matter in controversy.

### 1. Financial Interest in a Party to this Action

■ Plaintiff does not allege that I or any member of my family *individually* have a direct legal or equitable interest or a relationship as a director, adviser or other active participant in the affairs of any party to this action. Rather, he alleges that *as a fiduciary* I have a disqualifying

"financial interest" because I am a trustee of Yale, *see supra* note 1 (definition of "fiduciary" includes trustee), and that I have an additional disqualifying "financial interest" because my wife has a "financial interest" as an "active participant in the affairs" of Yale Law School. *Id.* ("financial interest" under section 455(b)(4) includes "active participant in the affairs of a party"); June 25 Letter at 2. Yale, however, is not a party to this action.

In an effort to suggest, if not create, a disqualifying financial interest under the statute, plaintiff sets out this set of relationships: he links me and my wife to Yale, Yale to Westinghouse and Westinghouse to WESTCOM. June 25 Letter at 2. As stated above, plaintiff begins with the allegation that my wife and I have a financial interest *in Yale.* He then contends that Yale has a financial interest in Westinghouse because "Yale has relied upon and still seeks corporate gifts from Westinghouse." June 25 Letter at 2. Next, he alleges that this makes Westinghouse an "active participant" in Yale's affairs under section 455(d)(4). *Id.* Even if I assume for the argument only that all of these allegations are true, I would be required to find that plaintiff has simply misapplied the statute.

■ It is irrelevant to plaintiff's cause that Westinghouse may or may not be an "active participant" in Yale's affairs. Section 455(d)(4) recognizes that an "active participant in the affairs *of a party* " has a financial interest in that party. Under section 455(d)(4), the allegation by plaintiff that Westinghouse is an "active participant" in the affairs of Yale simply means that Westinghouse has a financial interest in Yale; it does not mean that Yale necessarily has a financial interest in Westinghouse, much less that a trustee or faculty member of Yale has any such interest.[8] It

---

8. There is no support in the statute or case law for the proposition that the financial interest of a parent corporation (Westinghouse) of a party to an action (WESTCOM) in a third party (Yale) makes the fiduciaries of that third party (trustees of Yale) subject to disqualification under section 455(b)(4). In other words, Westinghouse's alleged "active participation" (and hence "financial interest") in Yale does not necessarily mean that Yale and its fiduciaries have a disqualifying "financial interest" in Westinghouse. In any event, the evidence submitted by plaintiff, such as it is, does not even support the idea that Westinghouse is an "active participant" in the affairs of Yale.

is, I suppose, arguable that plaintiff intended to claim that Yale, and (by inference) I as a fiduciary of Yale, are "active participant[s]" in the affairs of Westinghouse by virtue of Westinghouse's donations to Yale; it is enough to say that he has failed to make any such claim.

Even if plaintiff had indeed made the dubious claim that Yale is an "active participant" in the affairs of Westinghouse, I find that there are simply no facts before the court to support such a claim. For instance, plaintiff does not present facts to support the allegation that Yale "actively" solicits Westinghouse funds or that donations from Westinghouse to Yale amount to the "active participation" of Yale in Westinghouse affairs; the unsupported suggestion that Westinghouse is an " 'active participant' in Yale's affairs" is, as noted above, irrelevant to this discussion. *See supra* note 8 and accompanying text.

■ My alleged "financial interest" in a party presumably could be derived from other parts of the definition in section 455(d)—for example, from a legal or equitable interest in a party or a relationship as director or adviser to a party. There is, however, no allegation—and, as a matter of fact, no allegation is possible—that I or any member of my family owns a legal or equitable interest in a party to this action or serve in any way as a director of or adviser to a party to this action. To the extent that plaintiff implies that *Yale* owns a legal or equitable interest in a party to this action, he is simply wrong. For instance, plaintiff argues that Yale has an interest in the future giving of Westinghouse. June 25 Letter at 2, 3. However, the hope or expectancy of Westinghouse's future giving—a hope or expectancy that Yale has denied, Affidavit ¶ 4 (a denial nowhere contradicted in the record)—does not constitute a financial interest in Westinghouse. In *In re New Mexico Natural Gas Antitrust Litigation*, 620 F.2d at 795–96, for example, the possibility that a judge might benefit from lower gas bills as a public utility consumer and member of the general public, depending on the outcome of the litigation before him, was held not to constitute a substantial or disqualifying "financial interest." Likewise, in *In re Virginia Elec. & Power Co.*, 539 F.2d at 366, the "remote contingent possibility" that a judge might receive a refund as a consumer from an electric company appearing before him, depending on the future outcome of the litigation, was held not to qualify as a "financial interest." Such a remote and contingent interest has been described as "closely analogous to what is known as a 'bare expectancy' in property law," which has no "legal significance." *Id.* at 366–67.

In sum, plaintiff has failed to allege that I, any member of my family or Yale have a "financial interest" in a party to this action.

### 2. Financial Interest in the Subject Matter in Controversy

■ We may assume *arguendo* that plaintiff claims that I have a "financial interest" in the subject matter in controversy because of my affiliation with Yale, a non-party educational corporation. To establish a "financial interest" in the subject matter in controversy, the effect of a favorable ruling must be direct rather than indirect, speculative or slight. *In re Placid Oil Co.*, 802 F.2d 783, 786–87, *reh'g denied*, 805 F.2d 1030 (5th Cir.1986) (judge sitting on case involving 23 state banks had "financial interest" because of his large stock interest in non-party state bank, but financial interest was not in the "subject matter in controversy" because it was "remote, contingent, and speculative").

Plaintiff makes no specific allegations about Yale's financial interest in the subject matter in controversy; he only makes broad and unsupported allegations about Yale's financial interest in a parent corporation of a party to the action. It is clear, in any event, that Yale has no direct or indirect financial interest in the subject matter in controversy—to wit, who owns the telephone management system called COM–NET.

Certain of plaintiff's allegations *imply* that Yale has a financial interest in the subject matter in controversy. Plaintiff claims that "an adverse impact upon Westinghouse [supposedly in the event of a ruling against WESTCOM] (of possibly mil-

lions of dollars) could affect its ability and/or willingness to make future gifts to Yale." June 25 Letter at 2. This claim suggests possibilities that are indirect and so "remote, contingent, and speculative" that they could not possibly constitute a financial interest on the part of Yale in the subject matter in controversy. *See In re Placid Oil Co.*, 802 F.2d at 786–87; *see generally Department of Energy v. Brimmer*, 673 F.2d 1287, 1295 (Temp.Emer.Ct. App.1982) (where judge owned stock in energy companies affected by regulations in controversy, but none were parties before him, judge had no "direct economic or financial interest in the outcome of the case"); *Mavis v. Commercial Carriers, Inc.*, 408 F.Supp. 55, 63 (C.D.Cal.1975) (no basis for recusal where judge owned stock in an oil company which was doing substantial business with a corporation which owned all the stock of a corporation which owned all the stock of a subsidiary which was defendant in the litigation before judge).

The possibility of a direct financial interest in the subject matter in controversy is even more speculative and remote in this case than in *In re Placid Oil Co., Brimmer* and *Mavis*. In this case there is no allegation that Yale or I as a trustee have any investment in the securities of Westinghouse,[9] and a decision rendered in this case will have no predictable or likely effect upon Yale.

Plaintiff's reliance upon *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988), is misplaced and does not alter the conclusion that any arguable Yale financial interest in the subject matter in controversy is indirect and speculative. In *Liljeberg*, the presiding judge was a trustee of Loyola University ("Loyola"), *id.* at 850, 108 S.Ct. at 2197, which was in the process of negotiating the sale of land to Liljeberg for a proposed hospital. *Id.* The federal court litigation concerned the ownership of a corporation and the corporation's state-issued "certificate of need" for the proposed hos-

pital, *id.* at 852–55, 108 S.Ct. at 2198–99, and the success of the negotiations between Loyola and Liljeberg depended upon the federal court's determination that Liljeberg controlled the "certificate of need." *Id.* at 857, 108 S.Ct. at 2201. A federal court decision in favor of Liljeberg would facilitate the sale of the land from Loyola to Liljeberg. Loyola (and the presiding judge as a trustee of Loyola) would benefit in at least two ways from that sale: Loyola would profit from the sale of the land to Liljeberg for the hospital, and its land adjacent to the property to be sold would benefit from the project. *Id.* at 865, 108 S.Ct. at 2205. Although the Supreme Court did not require the disqualification of the judge under section 455(b)(4), because the judge did not have actual knowledge of these financial interests, the Court found that disqualification was required under section 455(a) because the facts of the case "create precisely the kind of appearance of impropriety that § 455(a) was intended to prevent." *Id.* at 861, 867, 108 S.Ct. at 2203, 2206.

In contrast to the actions or possible actions of the district judge in *Liljeberg*, my actions in this case can have no predictable direct or indirect financial effect on Yale. As I have already noted, it would be pure conjecture to state that a decision in this action will cause Westinghouse, the parent of defendant WESTCOM, to alter in any way its negligible giving to Yale. The judge's interest in *Liljeberg* was not the sort of remote, speculative and implausible interest which plaintiff alleges in this case and hence it offers no support to this second motion for recusal.

I conclude that I have no "financial interest" in a party to this action or in the subject matter in controversy requiring disqualification under section 455(b)(4).

### B. *"Any Other Interest"*

■ Disqualification is required under section 455(b)(4) if there exists "any other interest that could be substantially affected by the outcome of the proceeding." As

---

**9.** It may be noted that I do not have a financial interest in the securities of Yale simply by virtue of my position as trustee. Section 455(d)(4)(ii)

provides that "[a]n office in an educational ... organization is not a 'financial interest' in securities held by the organization."

noted above, there is only a remote and speculative possibility, if any, that a decision in this case will affect Yale in any way, financially or otherwise. *See supra* Section II.A. It follows that there is no possibility that any interest of Yale could be "substantially affected" by the outcome in this case. The speculation of plaintiff that "an adverse impact upon Westinghouse (of possibly millions of dollars) could affect its ability and/or willingness to make future gifts to Yale," June 25 Letter at 2, cannot be accepted as a serious possibility or as an interest of Yale that could be "substantially affected" by the outcome in this proceeding.

Plaintiff argues broadly and with deceptive simplicity that "[s]olicitation of a litigant or his counsel to further financial interests of a judge [including financial interests held as a fiduciary,] however inadvertent, however negative the response and however pure the intentions of the judge, requires recusal." June 25 Letter at 3. To support this seemingly obvious proposition plaintiff gravely points out that he is aware of other noteworthy, if not questionable, solicitations of support by Yale "[i]n addition to Yale's solicitation of Westinghouse": "certain counsel in the case have been solicited to contribute funds to Yale or Yale Law School, including at least principal counsel for defendants, Richard Horgan, Esq. and counsel for plaintiff, Guy Heinemann, Esq. and the undersigned." *Id.* at 4 n. 3. This is apparently an oblique way of reporting that Messrs. Horgan, Heinemann and Murray are alumni of Yale and presumably are "solicited" by Yale from time to time.

Plaintiff's theory of recusal is untenable because, among other things, its application leads to obviously absurd results. A substantial number of lawyers appearing before this court—as revealed by the passages from plaintiff's June 25 Letter quoted here—are alumni of Yale and potentially make gifts to Yale over time. Plaintiff's argument would require disqualification of a judge who is a Yale trustee or teacher or who is married to a Yale teacher in all cases where any Yale alumnus surfaces as a party or as an attorney, or perhaps even as a witness. The principle of plaintiff's argument would of course apply to *any* judge who serves, or who has a spouse who serves, *any* educational institution as a trustee or teacher.[10]

## III. Recusal under Section 455(b)(5)(iii)

Section 455(b)(5)(iii) requires disqualification if I have a *personal* interest—there is no reference to a fiduciary interest—individually or through my wife, that could be substantially affected by the outcome of the proceeding. Since I clearly have no individual interest that could be affected, plaintiff alleges that my wife as a Professor of Law at Yale Law School may benefit from a decision in favor of WESTCOM in this case because, "[i]f as a [j]udge [I] please Westinghouse it may choose to contribute more to [Yale's] treasury, making possible enhanced salaries and other benefits." June 25 Letter at 3. These claims are so speculative and so patently lacking in merit that nothing more need be added to what has already been stated.[11]

## IV. Appearance of Partiality (Section 455(a))

Finally, plaintiff argues that my relationships with Yale give rise to an "appearance" of partiality requiring recusal under section 455(a). The standard under section 455(a) is whether a judge's impartiality might reasonably be questioned. "The substantive standard for determining recusal pursuant to section 455(a) is whether a reasonable person, knowing and understanding all the relevant facts, would conclude that the judge's impartiality might reasonably be questioned." 775 F.Supp. at 1523; *In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1313.

Applying this standard, I find that a reasonable person, knowing and understanding all of the relevant facts, would not conclude that my impartiality might reasonably be questioned. *See In re Plac-*

10. *See infra* Conclusion.

11. *See supra* note 10 and accompanying text.

*id Oil Co.*, 802 F.2d at 787 ("A remote, contingent, and speculative interest is not a financial interest within the meaning of the recusal statute ... nor does it create a situation in which a judge's impartiality might reasonably be questioned.").[12]

The court in *Easley v. University of Michigan Bd. of Regents*, 853 F.2d 1351, 1356–58 (6th Cir.1988), *after remand*, 906 F.2d 1143 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991) (*"Easley"*), also had occasion to consider whether the affiliations of a judge with a university created an appearance of partiality requiring recusal under section 455(a). In that case, however, the university was actually a party to the litigation; the suit was against the University of Michigan, its trustees and its law school dean. The impartiality of the judge was challenged by the plaintiff on the basis that the judge was an alumnus of the law school, had a son who was an alumnus of the law school, was a former partner of a law firm that represents the University of Michigan Hospital and had two sons who were partners of that firm, was a sometime volunteer fundraiser for the law school, was a member of the Committee of Visitors of The University of Michigan Law School, and was a member of The University of Michigan Club of Detroit.

Even with all these various affiliations with the university, and even where the university was a party to the case, the Court of Appeals in *Easley* concluded that there was no appearance of partiality requiring the judge's disqualification. In this case, the relevant and uncontested facts are: (1) Yale is *not* a party to this case; (2) I am a trustee of Yale; (3) my wife is a Professor of Law at Yale Law School; (4) the corporate parent of a defendant in this action gave $5,000 to Yale over the last four fiscal years (1987–91); (5) that contribution represented a negligible amount (about .0038%) of the total contributions to Yale in fiscal year 1989–90 and represented a much smaller percentage of the total contributions for the last four fiscal years; and (6) Yale does not consider the corporate parent of the defendant in this action to be a significant contributor. A reasonable person knowing and understanding these facts, particularly in light of both the ruling on Plaintiff's First Recusal Motion and the full record of this case, would not conclude that my relationships with Yale present, even remotely, an appearance of partiality in this litigation.

### Conclusion

If the courts were to accept plaintiff's theory as a basis for recusal, a judge who is a trustee, a teacher or married to a teacher of an educational institution would have to recuse himself in every case involving any party (or, presumably, any attorney) that (1) has given any amount of money to the institution which the judge (or a spouse) serves; (2) might give to the institution which the judge (or a spouse) serves; (3) has been solicited to give money by the institution which the judge (or a spouse) serves; or (4) is the subsidiary of a corporation that has given, might give, or has been solicited to give to the institution which the judge (or a spouse) serves. The list of opportunities for groundless recusal on the basis of this theory is endless.[13] To state the rule is to reveal its lack of merit; not surprisingly, it finds no support in the applicable statutes or relevant case law.

This appears to be another "transparent scheme to avoid the adverse consequences of the court's discovery rulings." 775 F.Supp. at 1533. As a result, the court and the parties have once again been required

---

**12.** As noted earlier, the facts of *Liljeberg* are readily distinguishable from the facts of this case and do not support an allegation of appearance of partiality on my part. Moreover, plaintiff's contention that *Pepsico Inc. v. McMillen*, 764 F.2d 458 (7th Cir.1985), is "substantially analogous" to this case, June 25 Letter at 4, is not convincing. *Pepsico*, as plaintiff himself points out, involved the direct approach of a "headhunter" seeking to find employment for the judge to the law firms appearing before him. The wholly speculative and unsupported allegation that Yale, a non-party in this case, actively seeks to persuade another non-party to provide additional funds to Yale, June 25 Letter at 1, in no way compares to the appearance of partiality in *Pepsico*.

**13.** *See supra* note 10 and accompanying text.

to expend an inordinate amount of time and effort addressing speculative and unsupported allegations by a party agitated by the presiding judge's pre-trial rulings. It is the court's earnest hope, in the interests of justice and of all the parties, that the efforts of all concerned can now be directed toward the resolution of the various substantive issues in this complex and long-delayed litigation.

For the reasons stated above, plaintiff's second motion to recuse, *see* June 25 Letter, is denied.

It is so ordered.